36601. CAMP v. EMORY UNIVERSITY.

TOWNSEND, J. 1. Facts which are consistent with either of two opposing theories prove neither. *Woodruff* v. *American Mut. &c. Ins. Co.*, 67 *Ga. App.* 554 (21 S. E. 2d 298); *Weathers Bros. Transfer Co.* v. *Jarrell*, 72 *Ga. App.* 317 (33 S. E. 2d 805); *Chevrolet-Atlanta Division, General Motors Corp.* v. *Nash*, 81 *Ga. App.* 671 (59 S. E. 2d 681); *Martin* v. *Medlin*, 83 *Ga. App.* 589 (64 S. E. 2d 73).

2. Where it cannot reasonably be determined from the plaintiff's evidence whether or not the defendant's negligence caused the injury complained of, a nonsuit is proper. *Advanced Refrigeration* v. *United Motors Service*, 71 *Ga. App.* 576 (31 S. E. 2d 605). " 'When the party upon whom the burden of an issue rests seeks to carry it, not by direct proof, but by inferences, he has not, in this reasonable sense, submitted any evidence for a jury's decision, until the circumstances he places in proof tend in some proximate degree to establish the conclusion he claims; and for this, the facts shown must not only reasonably support that conclusion but also render

less probable all inconsistent conclusions.' *Georgia Ry. & El. Co.* v. *Harris,* supra [1 *Ga. App.* 714, 57 S. E. 1076]." *White* v. *Executive Committee of Baptist Convention,* 65 *Ga. App.* 840, 842 (16 S. E. 2d 605). In the present case, the negligence alleged is an improper injection of a hypodermic needle into the plaintiff's leg in such manner that a drug being administered at the time failed to flow into the vein, where the consequences would have been beneficial, but on the contrary the insertion of the needle was into the fleshy part of the leg, where the consequences were injurious. No witness testified that the needle was inserted into tissue rather than into a vein, and the statement of the medical witness to the effect that if it had happened he would have seen it, is negative evidence to the contrary having some probative value. The plaintiff seeks to create an inference that the needle was improperly inserted from opinion testimony that if such were the case the results which in fact occurred would be likely to happen. The same witness, however, testified that some persons were hypersensitive to the drug and would have an unfavorable reaction even when it was properly administered. Accordingly, construing the testimony in favor of the plaintiff the circumstances shown do not render the conclusion that the defendant was negligent any more probable than the conclusion that the plaintiff was hypersensitive to the drug. This being so, there was no case to take to the jury, and the judgment of nonsuit was without error.

*Judgment affirmed.* *Gardner, P. J., and Carlisle, J., concur.*

DECIDED APRIL 2, 1957.

*Carter Goode, William Hall,* for plaintiff in error.

*James A. Branch, Thomas B. Branch, Jr.,* contra.

Mrs. Dorothy Camp filed an action for damages against Emory University in the Superior Court of DeKalb County, alleging in substance that she was a paying patient at Emory Hospital; that while receiving post-operative care a named doctor and nurse, acting as agents and employees of the hospital, at stated periods over a 48 hour interval while plaintiff was unconscious, administered intravenous feeding together with a drug called Levophed, which caused a sloughing away and gangrenous con-

dition of the flesh of her leg, resulting in extended disability and permanent disfigurement of the leg; that the condition was caused by the negligence of the defendant's agents in improperly inserting and checking the hollow needle through which the drug flowed, and that in fact the fluid did not flow into the plaintiff's vein as was intended in the proper administration of the drug, but flowed subcutaneously into the flesh and tissue of the leg, causing it to rot and slough away.

The proof upon the trial of the case was that Dr. Roberto was a resident in chest surgery at Emory University Hospital; that the drug was given by his direction and he was present a part of the time but not all the time when the injections were given by hospital nurses; that certain persons are hypersensitive to the drug and its effect is harmful rather than beneficial to them, but this is true of other drugs having the same purpose—stimulants and vaso-constrictors—that it is a calculated risk, and used as a last resort; that when the drug was ordered for the plaintiff she was in such a condition that they were unable to get a blood pressure reading and this created an emergency justifying the use of the drug; that it was used intermittently for the next 48 hours during which time the witness checked the plaintiff, and stated in this connection; "I did not see any administration of this drug outside of the vein. If it had happened, I would have seen it." The witness admitted that if the needle had been injected into tissue rather than into the vein he would expect it to cause an area of poor blood supply; whether this would proceed to necrosis and slough would be hypothetical in his experience; he would expect it to do so if present in sufficient quantity.

At the conclusion of the plaintiff's evidence the trial court granted the defendant's motion for nonsuit, and the exception is to this ruling.