42764. GENERAL INSURANCE COMPANY OF AMERICA v. DAVIS.

ARGUED MAY 2, 1967—DECIDED MAY 19, 1967—
REHEARING DENIED JUNE 1, 1967—

*Robert E. Knox, Fulcher, Fulcher, Hagler, Harper & Reed, W. M. Fulcher,* for appellant.

*Randall Evans, Jr.,* for appellee.

FELTON, Chief Judge. The hazard insured against in the insurance policy in this case is *direct damage* by *windstorm.* "Windstorm" is not defined in the policy and various courts have applied a definition where the policy gives none. That definition, as combined from several foreign cases, is generally and substantially: "a wind of sufficient violence to be capable of damaging the insured property, either by its own unaided

action, or by projecting some object against it; that is to say, that any wind that is of such extraordinary force and violence as to thereby injuriously disturb the ordinary condition of the things insured, is tumultuous in character, and is to be deemed a windstorm within the purview of the policy in absence of a provision therein to the contrary." Adams Apple Prod. Corp. v. National Union Fire Ins. Co. of Pittsburgh, 170 Pa. Super. 269 (2, 3) (85 A2d 702); Gerhard v. Travelers Fire Ins. Co., 246 Wis. 625 (18 NW2d 336, 337); Fidelity-Phenix Fire Ins. Co. of N. Y. v. Board of Education of Town of Rosedale, 201 Okl. 250 (204 P2d 982, 985). In this case there is no competent evidence, either direct or circumstantial, sufficient to support a finding that the plaintiff's damage was caused directly or indirectly by a windstorm. The evidence shows only a gusty wind capable of blowing trash and leaves. There is nothing tending to show a wind with enough force and velocity to measure up to the above definition of "windstorm." The contention that the policy would cover *any* damage alleged if there was *any* wind sufficient to cause it whether there was a windstorm or not is without merit. If this is true, the construction of "windstorm" is stretched beyond the fair interpretation of the word and the contract is converted into a mere "wind" policy. See the special concurrence in *McClelland v. Northwestern Fire &c. Co.,* 91 Ga. App. 640, 643 (86 SE2d 729). Assuming, for the sake of argument, that the damage was done because cool air entered the vents in the top of the building, mixed with the warm air inside and caused a "combustion" which, in turn, directly caused the damage, it was not shown that the "combustion" would not have resulted from wind of lesser velocity and turbulence than that accompanying a windstorm. The same would be true even though there were five vents on one side of the building and four on the other. Since there was no evidence that the damage was caused by windstorm, the coverage of the policy against damage from a windstorm could not be involved and applied. The ruling in *Guest Printing Co. v. American Ins. Co.,* 222 Ga. 674 (151 SE2d 717), contains nothing in conflict with the ruling herein made. The point discussed in that case would not be reached unless

the evidence authorized a finding that there was a windstorm. Then the question would arise as to whether the cause of the damage was the windstorm or a poorly erected ceiling, etc. Any ruling, express or implied, in *Stephens v. Cotton States Mut. Ins. Co.*, 104 Ga. App. 431 (121 SE2d 838) to the effect that a recovery for windstorm damage may be had upon proof of just *any* kind of wind capable of doing the damage alleged, whether measuring up to the definition of a windstorm or not, will not be followed since such a ruling was obiter because the evidence showed a wind measuring up to the correct definition of a windstorm. *Travelers Indem. Co. v. Wilkes County*, 102 Ga. App. 362 (116 SE2d 314); *Sun Ins. Office, Ltd. v. Guest Camera Store, Inc.*, 108 Ga. App. 339 (132 SE2d 851) and cases cited.

In Williams v. Detroit Fire &c. Ins. Co., 280 Mich. 215 (273 NW 452) the court defined "windstorm" as follows: " 'The word or expression "windstorm" is to be distinguished from the word "wind." The word is defined as a storm characterized by high wind with little or no precipitation. As used in the policies in suit it should be considered as something more than an ordinary gust of wind, no matter how prolonged and it takes its meaning, measurably at least, from the other words with which it is associated, that is, tornado and cyclone, but it need not have either the cyclonic or the twirling or whirling features which usually accompany tornadoes or cyclones; but it must be more than an ordinary current of air no matter how long continued. In other words, it must assume the aspect of a storm that is an outburst of tumultuous force, and unless the plaintiff has shown that the damage to this building was caused by a windstorm, by a preponderance of the evidence, that is, by evidence that is more convincing to you than the other evidence, then your verdict must be for the defendant.' " This definition was again approved in Cree Coach Co. v. Wolverine Ins. Co., 366 Mich. 449 (115 NW2d 400). See 93 ALR2d 148, where it is editorially stated: "In any action to recover under a windstorm policy the first question is necessarily whether a windstorm within the meaning of that word as used in the policy took place. The resolution of this question is not without difficulty . . . and

there are somewhat conflicting views as to what proof is necessary in order to establish that the wind alleged to have been the causal agent of the damage was in fact a windstorm." See §§ 2-7 of the annotation. There was no competent evidence in the instant case that the damage was done by a windstorm nor is there competent evidence to show that there was a windstorm. We do not think that any court has consciously intended to hold that any wind amounted to a windstorm simply because it happened to damage property.

Appellee contends that appellant is estopped to contend that the court erred in overruling the motion for a judgment notwithstanding the mistrial, for the reason that, after the court had overruled a motion for a directed verdict generally, appellant moved for a directed verdict against attorney's fees and damages for bad faith, stating: "Now, after the conclusion of the evidence, the defendant moves for a directed verdict in its favor relative to any damages for attorney's fees for alleged bad faith because the evidence as to windstorm although sufficient to create a question for the jury is not of such compelling weight and character to show that the evidence that the defendant insurance company acted in bad faith when it refused to pay the plaintiff's claim under the policy. For that reason plaintiff is not entitled to recover damages for attorney's fees, as a matter of law, and the question of bad faith should not be submitted to the jury." Thereupon, counsel for both parties approached the bench and agreed that the motion as to bad faith was good, and counsel for the plaintiff stated "that he here in open court was withdrawing that voluntarily after the motion made by counsel for defendant from further consideration of the jury [sic]." There is no ground for estoppel here. What the appellant's attorney said about the issue as to windstorm's being a question for the jury at that time was the law of the case under the court's ruling overruling the defendant's motion for a directed verdict generally and the appellee did not base his agreement to eliminate the damages issue on the appellant's statement.

The court erred in overruling appellee's motion for a judg-

ment notwithstanding the mistrial, and direction is given that judgment be entered in accordance with such motion.

*Judgment reversed. Hall and Eberhardt, JJ., concur.*