23398. SINKFIELD v. THE STATE.

Argued March 15, 1966—Decided April 7, 1966.

*George C. Kennedy,* for appellant.

*Wright Lipford, Solicitor General, Arthur K. Bolton, Attorney General, Rubye G. Jackson, Assistant Attorney General,* for appellee.

Cook, Justice. Joe Louis Sinkfield was indicted in Meriwether Superior Court for the murder of Walter Ed Griggs, Jr., by shooting him with a shotgun. The defendant was found guilty with a recommendation of mercy. In due time he filed his motion for new trial on the general grounds, which was denied. In his appeal to this court he enumerates as error the judgment overruling the motion for new trial, and five additional errors, each of which relates to the charge to the jury.

■ The material evidence tended to disclose that: The defendant, accompanied by his sister and others, attended a party at the home of Ruth Smith. The deceased and his nephew were in attendance at the same party, which is designated in the record as a "hot supper." During the party Ruth Smith ordered

the defendant and his sister to leave her house "to avoid trouble," whereupon she and the defendant's sister became involved in a fight, which was joined in by two other women present. In the process of the fight the defendant and the deceased attempted to separate the women. The defendant was pushed off the porch by the deceased while the altercation was under way. The defendant immediately went to his automobile, which was parked back of the house, removed a shotgun, and returned to the house. As he approached, the deceased and his nephew were standing in the kitchen door in full view of the defendant and other witnesses. The nephew of the deceased was holding a rifle or a gun in his hands. The defendant fired the shotgun in the direction of the two, hitting and killing the deceased who, according to uncontradicted testimony, fell to the floor mortally wounded without having moved forward in the direction of the defendant. At the time of the shooting, the fight on the porch of the house, in which the sister of the defendant was involved, had stopped and one of the participants was in the yard, close to the defendant.

The defendant in his unsworn statement admitted that he left the fight, went to his car, returned with the shotgun, and shot and killed the deceased. He stated that he left the fight and returned with the gun for the purpose of defending his sister, and that he fired it in the direction of the deceased and his nephew because "I looked around and look around and looked at the gun barrel of the rifle, or gun or whatever it was and I shot him." He stated further that: "I would have kept going but I know they had my sister in the house beating her."

It is contended by the defendant that the evidence does not disclose malice or premeditation on the part of the defendant. We do not agree with this contention. According to the testimony of the defendant's own witnesses and his statement, the jury was justified in concluding that when he left the altercation to get his gun, he intended to use it, and that he had ample time to cool off or leave. Instead he returned and mortally wounded the deceased, who was unarmed and standing in full view of the defendant. There is no evidence to demonstrate that the deceased had harmed the sister of the defendant, or that the de-

fendant endeavored to determine whether the fight in which his sister had been engaged was still in progress.

It is further contended that the defendant fired his gun to avoid being killed by the nephew of the deceased. This contention is likewise rejected. The jury was justified in finding that even though the nephew might have had a rifle or gun pointed at the defendant, the defendant was not justified in killing the unarmed deceased. The court gave the defendant the benefit of a charge on voluntary manslaughter and justifiable homicide.

The evidence clearly authorized the jury to find the defendant guilty of murder, and the trial judge did not err in denying the motion for new trial.

■ In assignment 2 the defendant complains of the charge to the jury on malice. In his brief counsel for the defendant contends that this charge placed "the burden upon the defendant in the case at bar of proving beyond a reasonable doubt that he was free from malice." He cites *Surles v. State*, 148 Ga. 537 (97 SE 538), wherein it was held that: "Where the evidence relied upon by the State to establish the fact of the homicide discloses circumstances of mitigation or justification, such evidence does not raise a presumption of malice."

The trial judge in the present case, after charging that, "There can be no murder under the laws of this State, without malice, either expressed or implied," charged that "the law presumes every homicide to be malicious, until the contrary appears from circumstances of alleviation, of excuse, or of justification. And under the law it is incumbent upon the defendant to make out such circumstances to the satisfaction of the jury, unless they appear from the evidence offered against the defendant. Ladies and gentlemen, while it is true that the law presumes malice when a homicide has been shown, yet that presumption of malice may be rebutted by the defendant from the evidence offered by him or from evidence offered by the State or from both."

In *Pressley v. State*, 201 Ga. 267 (39 SE2d 478), in considering an almost identical charge, this court held: . "Where the State relies both upon admissions by the defendant, admitting the homicide but stating circumstances of excuse or justification, and other evidence tending to show that the defendant was the

54

actual perpetrator of the offense charged, it is proper to charge this principle of law." See also *Latham v. State*, 211 Ga. 716 (4) (88 SE2d 379).

The charge on the subject of malice was adjusted to the evidence in the present case, and did not place an undue burden on the defendant.

■ In the third assignment of error the defendant asserts that the court erred in charging the jury: "Now, ladies and gentlemen, the law declares that justifiable homicide is a killing of a human being in self-defense or in defense of habitation, property or person, against one who manifestly and tends [intends?] or endeavors by violence or surprise to commit a felony against either." It is insisted that this charge limited the defense to a situation where the person killed was the one making the assault upon the person killing, and that it was not adjusted to the facts of the case. In this assignment the defendant takes out of context one sentence from the full charge on justifiable homicide. This was a correct principle of law (*Code* § 26-1011), and did not limit the defendant's defense.

In assignment 4, the defendant specifies as error one of the concluding sentences of the charge on justifiable homicide, as follows: "If you find the killing in this case has been justified then you should acquit the defendant." Again the defendant takes one sentence of the complete charge out of context and relies upon the use of the words "has been" as placing an undue burden upon the defendant of showing that the killing was justified. We find no merit in this contention.

In the fifth assignment the defendant contends that it was error to fail to charge the exact statutory language on the subject of justifiable homicide. There is no merit in this assignment, since the charge on this subject was full, complete, and adjusted to the evidence.

■ The sixth assignment of error is that the judge erred in charging the jury: "That in all cases of voluntary manslaughter, there must be some actual assault upon the person killing or an attempt by the person killed to commit a serious personal injury upon the person killing . . ." It is asserted that this charge removed from the consideration of the jury the principle

of voluntary manslaughter unless they found that the person killed was making the assault. It is pointed out that a witness for the State, Jessie Lewis Anthony, a nephew of the deceased, testified that he had a rifle in his hand at the time of the shooting and was standing next to the deceased.

The testimony of the witness Anthony was to the effect that before the defendant went to his car for his gun, the defendant told the deceased that he was going to get a gun and shoot him, that the deceased then said that he would get his rifle, but the witness prevented this by getting the rifle himself. This evidence did not raise a theory of voluntary manslaughter under the principle that "if a person shoots at another under circumstances that if death had ensued the offense would be reduced from murder to voluntary manslaughter, and by accident the shot hits and kills another person standing by, for whom the shot was not intended, the offense would be voluntary manslaughter." *McLendon v. State*, 172 Ga. 267 (4) (157 SE 475).

However, the charge of the court complained of was not subject to the objection made, even if under any view of the evidence the jury might have found that the defendant thought the nephew of the deceased was attempting to make an assault upon him, and in attempting to defend himself against this assault, shot the deceased by mistake. The language set out in this specification of error is a fragment of a sentence from a portion of the charge in which the trial judge charged, in almost the same language, *Code* § 26-1007. This court has held that it is not misleading to charge this Code section in a case where the jury might be authorized to find that the defendant shot the deceased by mistake, intending to shoot a person making an assault on him. *Charlon v. State*, 106 Ga. 400 (3) (32 SE 347).

*Judgment affirmed. All the Justices concur.*