25563. GETER v. THE STATE.

Argued December 9, 1969—Decided March 17, 1970— Rehearing denied March 30, 1970.

*Margaret Hopkins, Jess H. Watson,* for appellant.

*Lewis R. Slaton, District Attorney, Tony H. Hight, Joel M. Feldman, Arthur K. Bolton, Attorney General, Harold N. Hill, Jr., Executive Assistant Attorney General, Marion O. Gordon, Assistant Attorney General, Larry H. Evans,* for appellee.

PER CURIAM. William Geter, Jr., was jointly indicted with Marshall McClendon and charged with the offense of robbery by use of an offensive weapon. Geter pled not guilty and upon his separate trial before a jury and a judge of the Fulton Superior Court he was convicted and sentenced to serve four years in the penitentiary. The case was carried originally to the Court of Appeals and by that court transferred to this court, since the appellant had been convicted of a capital felony.

The evidence on behalf of the State would have authorized the jury to find that the victim, one Robert H. Adams, and his companion, James Daniell, were walking eastwardly along Walton Street near the intersection of Fairlie Street in the City of Atlanta at about 8 o'clock in the evening; that as they approached the intersection, a number of persons were waiting at a bus stop located there, among them being the accused Geter, his co-indictee McClendon and a third man who escaped and remains unidentified; that the three accosted Adams and Daniell and asked Adams if he were not "the man that killed Martin Luther King"; that the victim and his companion tried to ignore the remark and tried to proceed but their paths were blocked by the three; that the accused pulled a .22 caliber pistol out of his coat pocket and held it on the victim and his companion saying several times "don't move or I'll let you have it"; that the other two pulled out knives and threatened to slash Adams and Daniell; that one of the two, other than the accused Geter, snatched a briefcase from the possession of Adams, and Adams and his companion fled the scene, called the police, and returned to the scene where they identified the accused and McClendon, and where they subsequently recovered the briefcase from a trash pile where it had been thrown, and recovered its contents which had been emptied onto the sidewalk.

The accused testified under oath, and his testimony and the

other evidence in his behalf tended to contradict that for the State, and to explain his presence at the scene of the alleged crime consistently with his innocence. This evidence, however, merely raised issues of fact which were for the jury to resolve; and, the jury having resolved those issues against the defendant, we cannot say that the evidence was insufficient to authorize the verdict of guilty.

■ In ground 2 of appellant's enumeration of errors he contends that the trial court erred in instructing the jury on the law of conspiracy because the evidence did not authorize such a charge. It is well established in this State that conspiracy may be shown by circumstantial, as well as direct evidence. *Turner v. State,* 138 Ga. 808, 812 (76 SE 349); *Mills v. State,* 193 Ga. 139, 148 (17 SE2d 719); *Simmons v. State,* 196 Ga. 395 (1) (26 SE2d 785); *Lathan v. State,* 211 Ga. 716 (3) (88 SE2d 379). Where, as in this case, three persons are shown by the evidence to have accosted the victim with drawn weapons, surrounding him and blocking his path of escape, and where one of the three snatched the article alleged to have been taken from the victim, such evidence was sufficient to authorize the jury to infer a conspiracy on the part of the three to perpetrate the robbery with which the accused and one of the other two were charged. *Smith v. State,* 108 Ga. App. 275, 276 (132 SE2d 821). Under these circumstances, the evidence was sufficient to authorize the judge to charge the jury the law of conspiracy.

■ Enumerated errors 3 and 4 complain of the italicized portions of the following instructions: "I further charge you, Lady and Gentlemen, that in the crime charged in this bill of indictment, the question of intent is a material element that goes to make up such an offense or such a crime and the law says that *intent may be shown in many ways,* provided the jury finds that it existed from the evidence produced before them, that it may be inferred from proven circumstances or by acts and conduct, and that *it may be presumed when it is the natural and necessary consequences of an act."* The first italicized language was not error when considered in context with the whole charge. With respect to the second italicized portion of the foregoing charge, it is sufficient to say that, though it may be conceded

that it is erroneous and that the act must be the necessary consequence of the intent in order for the jury to infer intent, it is not apparent how this inapt statement could have been harmful to the appellant. This charge did not constitute reversible error.

■ The indictment in this case, returned on April 30, 1968, was drawn in one count. It charged the indictees with the offense of robbery in that they did on a stated date "wrongfully, fraudulently and violently by offering and threatening to shoot one Robert H. Adams with a pistol, which accused exhibited, the same being an offensive weapon and one likely to produce death when used in its usual and customary manner, . . . and by offering and threatening to cut the said Adams with a knife, which accused exhibited, the same being an offensive weapon, and by intimidation, and by suddenly snatching, take from the person of the said Adams, without his consent, and with intent to steal the same," a described article of personalty. Properly construed, this indictment charged the defendant only with the offense of robbery by the use of an offensive weapon, since, as this court has held in a full bench decision, where it is charged that an offensive weapon is used to commit the offense of robbery, there cannot be robbery by intimidation within the contemplation of the statute. *Daniels v. State,* 219 Ga. 381, 385 (133 SE2d 357). By a parity of reasoning the use in an indictment of the phrase "by suddenly snatching," where it is otherwise clearly charged that an offensive weapon was used to commit the offense, cannot reduce the charge to the lesser offense of robbery by sudden snatching. Properly construed, such an indictment will be taken as merely describing the way and manner in which the robbery by use of an offensive weapon was accomplished. Therefore, under the ruling in the *Daniels* case, supra, it was not error for the court to fail to define in its charge "robbery by intimidation" or "robbery by sudden snatching." This is true because the indictment does not charge the lesser offense of robbery by intimidation and robbery by sudden snatching (*Daniels v. State,* supra), and because the evidence shows without dispute that the crime of robbery was committed by the use of offensive weapons. The fact that the accused and his accomplices gained possession of

the article taken from the victim by snatching the same from his possession does not operate to reduce the offense since such evidence shows that at the time the snatching took place, the victim and his companion were under the restraint of offensive weapons. It was not error for the court to fail to define those lesser offenses as complained of in the 5th ground of enumerated errors.

■ Enumerated error 6 is as follows: "The trial court erred in charging 'on the other hand, if you do not believe the defendant to be guilty, or if you should have reasonable doubt as to his guilt, you should acquit the defendant in this case,' without also charging that if two theories, one of guilt and one consistent with innocence, appeared from the evidence, it would be their duty in accordance with the previous charge of the court, to accept the theory consistent with innocence and to acquit the defendant." The charge claimed to be omitted was adequately given in the following language by the court: "I further charge you that where the facts and evidence and all reasonable deductions therefrom present two theories, one of guilt and the other consistent with innocence, the justice and humanity of the law compel the acceptance of the theory which is consistent with innocence." This enumerated error is without merit.

■ The seventh ground of enumerated errors is as follows: "The court erred in failing to charge the jury specifically upon the issues raised by the sworn testimony of appellant and other witnesses in his behalf which presented an affirmative defense not confined to the general plea of not guilty." Nowhere in the brief and argument of counsel in support of this ground does counsel for the appellant set forth what language it is contended the court should have charged the jury. The court fully and adequately instructed the jury as to their duty to acquit the defendant if upon a consideration of all of the evidence they entertained a reasonable doubt as to his guilt. This ground is without merit.

■ Enumerated error 8 is deemed abandoned by the failure to argue it.

*Judgment affirmed. All the Justices concur, except Felton, J., who dissents.*

FELTON, Justice, dissenting. 1. While it is true, as the majority holds, that conspiracy may be shown by circumstantial evidence, it is also true that facts which are consistent with either of two opposing theories prove neither. *Southern R. Co. v. Newman,* 187 Ga. 132 (199 SE 753); *Camp v. Emory University,* 95 Ga. App. 442 (1) (98 SE2d 66). "Mere presence at the time and place that a crime is committed is . . . wholly insufficient of itself to evidence participation in the criminal intent." *Reese v. State,* 157 Ga. 766 (122 SE 195). Under the theory as to what occurred according to all of the witnesses except the State's (the alleged victim and his companion), the three alleged conspirators were all at the scene of the alleged robbery because they were each waiting for a bus at the same bus stop and the defendant, Geter, became involved only after he had been jostled by Daniell, knocking some articles he carried to the street, and exhibited his weapon only to reinforce his demand for an apology and an explanation of what was happening. The theory of conspiracy is further weakened by the fact that, although the three had been in the same bar at the same time prior to the alleged robbery, there is no evidence that they were either sitting or talking with each other. Moreover, the evidence does show that they did not even leave the bar together, but left one at a time over a period of time.

Even disregarding the defendant's theory of what occurred and accepting the testimony of the State's witnesses, however, the fact that Geter was present with a drawn, loaded pistol at the time the victim's briefcase was seized does not prove a concert of action between Geter and the other two men. The evidence shows that there were a number of persons, predominantly colored, waiting for a bus and that there were wild accusations made regarding the murder of Martin Luther King, Jr., which had just recently taken place. At least three of those persons, including the defendant, had been drinking beer just prior to that time. In this emotional, potentially explosive atmosphere, the fact that Geter became involved, even to the extent showed by the evidence, is neither surprising nor probative of any conspiracy to rob. There is no evidence that he said or did anything with regard to the victim's briefcase prior

to its seizure by one of the other persons present. On the contrary, it appears that his attention and remarks were directed solely at Daniell, the man he claimed had jostled him. The conduct of the accused after the alleged robbery—that of going to a public bar, calling the police to report the theft of his personal articles and waiting for them to arrive, rather than fleeing the area—does not jibe with that of a man fearful of arrest for conspiracy to rob.

In short, the evidence at best might show the accused's participation in the robbery on the spur of the moment, but it is not strong enough to show the concert of action necessary for a conspiracy. The evidence is equally or even more consistent with the accused's version, i. e., that he was a victim of circumstances and was not acting in concert with anyone else, for the purpose of robbery or any other purpose. For anyone to conclude that there was a conspiracy to commit the identical robbery would require that its basis be the most miraculous series of coincidences. The conclusion that there was a conspiracy to commit some kind of robbery can rest alone on the mere proof of what happened, which would be a pure guess. In my opinion, then, the evidence did not authorize a charge on conspiracy.

2. In my opinion, both of the italicized portions of the charge ruled on in Division 3 of the majority opinion are harmful errors. The first portion should have been expressed more accurately so as to approximate the provisions of *Code* § 26-202, to wit: "Intention may be manifested by the circumstances connected with the perpetration of the offense, and the sound mind and discretion of the person accused." The second portion is clearly harmful error, since the jury might have been confused.

3. In Division 4 of the majority opinion, it is held that the trial court did not err in failing to charge on robbery by intmidation since the one-count indictment, as they construe it, charged the defendant only with the offense of robbery by the use of an offensive weapon and since, under the *Daniels* case, supra, where it is charged that an offensive weapon is used to commit the offense of robbery, there cannot be robbery by intimidation within the contemplation of the statute.

Under the law prior to 1957, the offense of robbery might be committed by three methods, i. e., (1) by force, (2) by intimidation, and (3) by sudden snatching. *Nelson v. State*, 203 Ga. 330, 337 (46 SE2d 488) and cit. Ga. L. 1957, pp. 261, 262 and 263 amended *Code Ann.* §§ 26-2501, 26-2502, and 26-2503 so as to add a fourth method, i. e., by use of an offensive weapon. "Use" is defined in § 26-2501 as amended as "use of *or offer to use*" the weapon. (Emphasis supplied.) The maximum punishments provided are death or life imprisonment for robbery by force or by use of an offensive weapon (§ 26-2502), and twenty years' imprisonment for robbery by intimidation (§ 26-2503) and by sudden snatching (§ 26-2504).

Under the majority view, the evidence authorized the finding that the accused was guilty of robbery by the use of an offensive weapon. Since there is no evidence that the weapon was "used in its usual and customary manner," as provided in the aforesaid amendment to § 26-2501, this finding could only be based upon the "offer to use." The burden was on the State to prove such "offer." To carry this burden, all that was shown, in addition to the accused's words, was that he held the weapon "like this." Since there is no clarification in the record as to how "this" was, we cannot assume that "this" meant pointing it at the victim or his companion, so as to constitute an offer to use it.

Even if his actions amounted to an offer to use the weapon, however, this would not restrict the jury to a finding of robbery by use of an offensive weapon. The holding in the *Daniels* case, supra, upon which the majority ruling is based, should be restricted to the facts of that case, which involved but one theory of that accused's guilt. In the present case, on the other hand, if there was no conspiracy, as we have argued in Division 1 hereinabove, the jury might conceivably find that there was an intent to rob, without any conspiracy, but that there was no such offer to use the weapon as would prevent a finding of robbery by intimidation, since they might believe the accused's testimony that he made no verbal threats. Thus, even if the jury rejected the version of what happened according to all of the testimony except that of the State's witnesses—that the accused was exhibiting the weapon not for the purpose of rob-

bery, but to demand an apology and an explanation—the accused was nevertheless entitled to have the case submitted to the jury on the theory, supported by evidence, that he was guilty of the lesser grade of offense, robbery by intimidation. "In every case where a substantial right of a defendant has been denied him by the court's failure to charge, a new trial must be granted, unless it is apparent that the error was harmless to him." *Nelson v. State,* 203 Ga. 330, 335, supra. In the present case, it is apparent that the error was *harmful* to the accused. The verdict of the jury shows that they did all they could to obtain the lighter punishment available for the offense of robbery, i. e., they recommended mercy, four years in the penitentiary, *and misdemeanor punishment.* It is submitted that misdemeanor punishment would not have been recommended had they intended to find the accused guilty of the graver grade of offense of "robbery by use of an offensive weapon" (a capital offense), rather than merely "robbery by intimidation," which is not a capital offense. *Edwards v. State,* 224 Ga. 616 (163 SE2d 823).

It should be too obvious to require citation of authority that where, as here, a statute defining an offense contains various defined grades of the offense, for which two different categories of punishment are provided, and where there is evidence (not merely an unsworn statement) that might tend to prove the commission of one of the lesser grades of the offense, the failure to charge the definition of the lesser grade of offense is harmful as a matter of law, even in the absence of a request therefor.

The holding of the majority in this case as to the failure to define the offenses involved is equivalent to their approving a charge on murder (under an indictment for murder) without further charge, when the evidence authorized a finding of guilty of offenses ranging from murder to pointing a pistol at another. The trial judge is required to charge on all issues raised by the evidence without request. Here, no defense was raised by the mere unsworn statement of the defendant, since he was sworn, and testified.

I would reverse the judgment of the trial court and grant the defendant a new trial before a jury properly charged in accordance with the principles of law hereinabove set forth.